JUDGE PBYOB
delivered the opinion oe the court.
In the year 1854, A. J. Kenner, being the owner of a tract of land in the county of Christian, through which the Henderson & Nashville Railroad Company proposed to run their road, relinquished to the company the right of way upon the following terms and conditions: “In consideration that the *204 Nashville & Henderson Railroad Company locate the Henderson & Nashville Railroad through my land (describing it by metes and bounds) I hereby relinquish to said company the x’ight of way for said road without further charge. It is, howevex', understood that should the people of Chx’istian County vote a tax for the building or completion of said road, then this right of way to be null and void.”
The railroad company, under this agreement, shortly after entered upon the land of Kenner and graded the track of the road through his entire farm. A mortgage was then executed by the company upon its franchises, right of way, road-bed, etc., to secure the loan of a large sum of money, and for the payment of which the bonds of the company were executed. In the year 1866 the holders of these bonds iixstituted their suit in equity and had the mortgage upon the road foreclosed, and the road, with its franchises, road-bed, right of way, etc., was sold, and purchased by E. B. Sebree; and in-the year 1867 Sebree sold the road to the Evansville, Henderson & Nashville Railroad Company.
In 1868, upon the petition of a majority of the qualified voters of Christian County, the county court of that county subscribed two hundred thousand dollars to the capital stock of the Evansville & Nashville Railroad Company, and levied a tax upon the property of the county to pay the interest on the subscription, and will continue, as appears in the agreed facts, to so levy the tax xxntil the principal and intei’est is discharged.
The x’ailroad company, after the making of this subscription by the county of Christian, or during the same year, proceeded to x’epair and reconstruct the grade of the railroad, originally made by the Henderson & Nashville Railroad Company, through and over this land, at a cost of about four thousand dollars, and used and controlled the track of the road, with its trains and engines, until the year 1870.
*205 In the year 1870 the American Contract Company leased this road for a number of years from the Evansville, Henderson & Nashville Railroad Company, and as lessee has been in the possession of the road since that date.
ICenner, the owner of this land, died in the year 1863, leaving a will by which he devised this land to his widow, B. E. Kenner, during her widowhood, and then to his infant son, Henry S. Kenner.
Kenner was in the possession of the land at the date of the relinquishment of the right of way, and up to his death; and his widow has been in the continued possession since that time. No objection seems to have been made by Kenner in his lifetime, or by his widow after his death, to the grading and construction of this -road through their land.
The widow, in her own right and as the statutory guardian and next friend of her infant son, conceiving that the levy of the tax in 1868 upon the property of the county for the completion and construction of this road operated to divest the appellee of all right to pass over this land with its trains, instituted the present action of trespass, on the 11th of August, 1871, against the appellee (the American Contract Company), alleging “ that with force and arms the defendants had entered upon this land, constructed for the bed of the road with their trains, etc., against the will and consent of the plaintiffs, and for which they claim damages,” etc.
An issue having been made by an answer to the petition, in which, among other things, it was pleaded that the relinquishment, made in the life-time of Kenner, of the right of way gave to the original company the right to enter upon the land, and that this inured to the benefit of the appellee, the law and facts were submitted to the court, without the intervention of a jury, and a judgment rendered for the appellee (the defendant), and from which this appeal is prosecuted.
*206 The appellee also insists that the condition upon which the existence of the right of way depended has never transpired; that no tax was ever voted by the people of the county in aid of the construction of the Henderson & Nashville Railroad. 2. That the breach of the condition subsequent could not destroy the estate .without actual entry having been made for that purpose by the grantor Kenner or his heirs. 3. That the appellants have waived their right to enter upon the land by their silent acquiescence in the construction of the road, and use of the land by appellee and those under whom it claims, at an expenditure by the latter of several thousand dollars, and therefore no action of trespass can be maintained.
The County Court of Christian having, upon the petition of a majority of the voters of that county, imposed a tax of two hundred thousand dollars upon the taxable property of the citizens for the purpose of constructing this railroad, we are inclined to the opinion that it was equivalent to a vote at the polls, and in considering the questions involved in this controversy will so regard it. It is true that this tax was levied to aid in the construction of the Evansville, Henderson & Nashville Railroad, but it was in fact the same road under a different name, running between the same points and upon the same track, partially constructed by and known as the Henderson & Nashville Railroad Company; and the Evansville, Henderson & Nashville Railroad Company, or its vendor Sebree, by the purchase under the decretal sale of the rights and franchises of the old company, became entitled, as owners of this road, to all the privileges and appurtenances belonging to it; if not, the appellee or its lessor at no time had the right to enter upon the land of the appellants for the purpose of constructing its road, and could be regarded in no other light than as trespassers ah initio.
There is nothing in the record entitling appellee to enter upon the land of the appellants but its purchase, including the *207 easements, right of way, etc., belonging to the original company. The appellee now holds and claims the right of way by reason of the grant by Kenner in the year 1854; and although courts are disinclined to destroy estates, whether freehold or for years, by reason of the breach or happening of conditions subsequent annexed to the grant, still a fair construction of the grant in question will not authorize this court to adjudge that the claim of the appellants can not be enforced, for the reason only that a majority of the voters in the county applied by petition to be taxed, instead of at the ballot-box. The essential inquiry in the case is, can the appellants maintain the action of trespass upon the facts proven ?
It is insisted by counsel for appellee that this action can not be maintained unless there was an entry upon the premises by either The grantor or his heirs after the condition broken. The effect of a subsequent condition is either to enlarge or defeat an> estate already created, or, in the language of Chancellor Kent, “such conditions operate to defeat estates already created, and there must be an actual entry in order to defeat the livery made on the creation of the particular estate; and, although there is a breach of the condition, it does not defeat the estate until an entry is made by the grantor or his heirs.” (4 Kent, 159.) “Regularly, where a man will take advantage of a condition, if he may enter, he must enter, for an estate of freehold or inheritance will not cease without entry or claim.” (1 Sheppard’s Touchstone, p. 153.) “Where an estate is upon condition in deed, and to be void provided the grantee goes to York, the law permits the estate to continue beyond the time when the contingency happens, unless either the grantor or his heirs make an entry or claim in order to avoid the estate.” (2 Blackstone, p. 155.)
The doctrine is well-settled at common law that no freehold or fee-simple estate can be destroyed by the breach or nonperformance of a condition subsequent, unless there is an entry *208 by the grantor or his heirs after the breach, or some claim equivalent to it. This common-law rule does not apply, however, to estates for years, or to the creation of mere easements, or the grant of an incorporeal hereditament. An estate for years or an incorporeal hereditament is not created at common law-by livery of seizin; and whenever the breach of a subsequent condition happens in an estate or grant of this character the estate terminates without any entry. (4 Kent, 128.) An estate that must be created by livery can not be defeated without some act equally notorious; and this is the distinction, so far as the necessity for a re-entry is required, between freehold estates and estates of less duration, when there has been a forfeiture or breach of a subsequent condition annexed. In this state, however, under the former practice, in the action of ejectment, the Consent rule, by which the confession of lease, entry, and ouster was made, estopped the tenant from relying upon an entry as a bar to the action to recover possession where there had been a breach of the condition. No actual entry was necessary at common law to forfeit such a contingent right as is the subject of this controversy, as it required no livery of seizin to create it.
It also appears that the grantor and his devisees have been in the continued possession of this tract of land from the year 1854 to the institution of the present action. The grant made by Kenner never divested him of the title to the strip of land over which this road ran. He was still the absolute owner of the soil, with the right of passage over it granted to the appellee or its vendor. The thing granted was intangible, and no actual entry could have been made upon it; nor was .any actual entry necessary, as the appellants were in the possession.
It does not follow, however, that because the condition has happened by which the estate in the appellee, or those under whom it claims, is to be defeated, that the action of trespass *209 can be maintained, without any notice or assertion of claim, on the part of those to whom the estate reverts.
During the life-time of Kenner the Henderson & Nashville Railroad Company, under whom appellee claims, had entered upon this land, and by his permission and consent made and graded the road-bed through the entire tract. He died long prior to the year 1868, and before the tax was levied upon the county in aid of the construction of the road he had devised to his wife for life or during her widowhood. this entire tract of land. After the tax had been imposed the lessor of the present appellee, in the year 1868, by the work and labor of its employees, .and at an expenditure of four thousand dollars — a sum greatly in excess of the damages claimed in this action — proceeded to complete the entire road through appellant’s land; and no objection whatever was made to the entry upon it, .or to this action on the part of the company, until three years after, in the year 1871, when this suit was instituted. The widow, who had the actual possession of this land, and was the owner during widowhood, is presumed to have known of the existence of the grant for the right of way and its terms; and instead of asserting claim to that forfeited right by notifying appellee of her intention to rely upon the forfeiture, permits this large expenditure of money, and the appellee, as well as the former company, to run their cars daily through her lands for three years after the happening of the condition upon which her right to the estate depended.
In the case of Ludlow v. The New York & Harlem R. R. (12 Barb. 440), where a condition subsequent annexed to a deed passing a fee-simple estate had been broken, it was held that the grantor, having failed to assert his right to the estate, or do any act equivalent to an entry at common law, but permitted the party in possession to enjoy the estate and make large expenditures upon it, for two years after the perfection *210 and completion of the road, was thereby precluded from recovering in an action of ejectment.
If this right to recover by a party entitled to a fee-simple estate upon the forfeiture is denied because of the failure to assert his right, we can not well see how the widow of Kenner can maintain an action of trespass against the appellee by reason of the alleged forfeiture of a mere easement. She should be denied this right, not only on account of her failure to assert her claim for so long a time, but because of the injury the appellee must necessarily sustain, resulting from this acquiescence on her part in the use and enjoyment of this right of way by this corporation, and the large expenditure of money made in completing it.
The more modern authorities on the subject of such forfeitures establish the doctrine that it is with the party in whose favor the condition is, or who becomes entitled to the estate by reason of the forfeiture, to say whether the estate shall be forfeited or not; and although the user, from which the grant of a public passway may be implied, must have continued for a period required to toll the right of entry in ejectment, the waiver of a forfeiture may nevertheless be inferred by reason of the failure of the party entitled to the estate to re-enter or assert some claim in a reasonable time, terminating the estate; and particularly in a case where the party to whom the grant is made is permitted to use and make valuable improvements on the premises after the condition is broken.
The courts adjudge the waiver of the forfeiture upon the principle that the happening of the condition does not ipso facto determine the estate, the same remaining in the grantee, but only subjects it to be defeated at the election of the grantor and his heirs, etc.; and for the additional reason that the for-, feitures of estates are not favored either in courts of law or equity; hence it has been held that where a lease is to become null and void upon the failure to pay rent, that the breach *211 makes it void as to the lessee, but only voidable as to the lessor. (Smith’s Leading Cases, 98; 12 Barb. 444; Reid on American Common Law, 139; 20 Barb. 456, 462.) This does not, however, preclude the lessor from recovering rent, although he may not rely on the forfeiture; and whether or not the failure to assert a claim in this case, so as to render the grant void, operates to deprive the appellants of any right to compensation, is a question not raised upon the issues made between the parties.
It is, however, insisted that neither of the lessees can maintain this action; that they hold as purchasers and not as heirs. There is much authority upon this point, and the leading cases in regard to estates of freehold, to be void upon condition, referred to in the elementary works on the subject, indicate that the grantor or his heirs only, and not a stranger or purchaser, can take advantage of the forfeiture.
This whole tract of land, including all of the several estates, was devised absolutely, without any reservation, to the appellants. There was no contingency undisposed of. This right of forfeiture or contingent interest, as well as the land itself, was devised to the appellants, and we see no reason why they did not occupy the same position with reference to this property and the appellee that the grantor himself did. There was nothing left undevised to pass to the heir, and the action by the heir would have been defeated at once by the production of the will. This identical question was presented in the case of Haydon v. Stoughton (5 Pick. 529), where, upon the forfeiture of an estate of freehold, it was adjudged that it passed to the residuary devisee, and not to the heir.
It is, however, urged by counsel for the appellants that as one of the plaintiffs is an infant, and was under disability at the time of the breach of the condition, that therefore no entry or claim could be made by him in order to divest the appellee of title. This position is well taken if it appeared that the *212 infant was entitled to the present use and possession of the land, or that he was so entitled at the time of the alleged trespass. There is no allegation in the petition of any present injury to the infant, or of any permanent injury to the estate in remainder, and therefore his guardian or next friend can not complain.
The 'appellants were not prejudiced by the refusal of the court below to permit the amended pleadings offered to be filed. These amendments contain nothing more than the facts upon which this opinion is based.
The widow having the sole right to the use, control, and possession of this tract of land, over which this passway was granted, during her'widowhood, we must concur with the court below that the action of trespass can not be maintained.
The judgment is therefore affirmed.