Raymundo **ZAMBRANO** and Alicia Zambrano, Appellants,

v.

Arturo **OLIVAS** et al., Appellees.

No. 6276.

Court of Civil Appeals of Texas, El Paso.

Jan. 24, 1973.

Rehearing Denied Feb. 14, 1973.

Niland, Niland & Cooper, Jack T. Niland, El Paso, for appellants.

Long & Koehler, Ward Koehler, El Paso, for appellees.

## OPINION

WARD, Justice.

This is a summary judgment case. Suit having been brought by the appellees for the title and possession of certain real estate in El Paso, they moved for summary judgment on the ground that the pleadings, admissions and supporting affidavits on file showed there was no genuine issue as to any material fact as to the title and possession of the property. Upon hearing, judgment was rendered for the plaintiffs for title and possession. We now have a final judgment where on the first appeal we were only presented with a partial summary judgment interlocutory in nature and not appealable. Zambrano v. Olivas, 477 S.W.2d 299 (Tex.Civ.App.—El Paso 1972, no writ). The judgment of the trial Court on the present appeal is reversed and the cause is remanded.

The common source of title to the property was in Esteban Sambrano on February 18, 1922. This suit turns on the construction of the provisions in a deed executed on that date by Esteban Sambrano to his sister, Elisa S. de Olivas, covering certain lots 6 through 18 in the Sambrano Suburb Addition in El Paso. The controlling provisions are to the following effect:

". . . That I, Esteban Sambrano . . . for and in consideration of the *the* promise and agreement of Elisa S. de Olivas, to supply the residents in Sambrano Su*r*burb with water for dómestic purposes, and to keep the pump, tank and pipes now used for such purpose in repair for three years, and for *a* reasonable char_es for such service to be paid by such residents,

"have Granted, Sold and conveyed, and by these presents do Grant, Sell and convey unto Elisa S. de *Sambrano* as her sole and separate property for and during her life and the remainder to her children who survive her, all that certain . . . parcel of land, . . . conditioned upon the performance of the stipulations hereinafter mentioned.

"TO HAVE AND TO HOLD, the above described premises, . . . unto the said purchaser*s* Elisa S. de Olivas for and during her life and afterwards her children who survive her, forever, *h* and I do hereby bind myself, . . . to warrant and forever defend, all and sin-

gular the said premises unto the said purchaser, Elisa S. de *Sambrano,* for and during her life and afterwards unto her children who survive her . . ."

Between the end of the deed and the acknowledgment and to the left of the grantor's signature there was added the following statement:

"I agree to furnish water and perform the service for the time mentioned and agree that in the event of my failure to do so, this deed may be cancelled by the grantor: X ———— X ————."

On September 5, 1923, Elisa S. de Olivas and her husband, Joaquin Olivas, conveyed the four lots, 15 through 18, containing the waterworks and the subject of the present suit to Victor Sambrano. Victor was a son of Esteban Sambrano. Elisa S. de Olivas died on August 23, 1969, and left as her survivors three children, who are the plaintiffs in the present suit.

Our attention has been directed by the parties to the case of Olivas v. Sambrano, 117 S.W.2d 482 (Tex.Civ.App., no writ), decided by this Court in 1938 as to the later history and litigation concerning the four lots. After Victor received the lots, there is a deed to Esteban Sambrano, deed from Esteban Sambrano back to Victor Sambrano, and Will of Victor Sambrano, duly probated and filed, devising to Esteban Sambrano all property belonging to Victor Sambrano, and an order granting letters of administration to Silverio Sambrano upon the estate of Esteban Sambrano. Silverio Sambrano, as Administrator of the Estate of Esteban Sambrano, then brought suit against Elisa S. de Olivas and Joaquin Olivas and recovered judgment in trespass to try title to the four lots. The Civil Appeals opinion affirmed the jury finding as to the proper execution of the deed from Elisa S. de Olivas and her husband to Victor Sambrano and further approved the jury determination that Esteban Sambrano, and those under whom he claimed, had established their title by adverse possession for the statutory

period of ten years subsequent to the deed dated September 5, 1923. The defendants in our present suit hold under the estate of Esteban Sambrano, and are now in possession of the property. Over the years, the letter "Z" has been substituted for the letter "S" at the beginning of the surname and the family is now known as Zambrano.

 Though no specific grounds are set forth in the motion for summary judgment, as required by Rule 166–A, subdivision (c), Texas Rules of Civil Procedure, as amended effective January 1, 1971, no complaint has been made thereto, and the position of the plaintiffs is clear. They assert that the first deed, dated February 18, 1922, created a life estate with the remainder to the children of the life tenant who survived, and the second deed of September 5, 1923, regardless of its terms conveyed only the interest of the life tenant. They argue that the life tenant generally cannot by later agreement with the grantor who originally created the estate or by conveyance divest the remaindermen of the interest which they acquired under the terms of the original deed. Henson v. Peterson, 218 S.W. 126 (Tex.Civ.App.—Texarkana 1920, writ ref'd); 37 Tex.Jur.2d 58. The conveyance by a life tenant operates only to the extent of transferring his own life interest though the deed purports to convey the fee simple title, Gibbs v. Barkley, 242 S.W. 462 (Tex.Comm'n App.1922), and as a general rule the statute of limitation does not commence to run against one who is entitled to an estate in remainder until the death of the life tenant. 2 Tex. Jur.2d 115. Therefore, it is the position of the plaintiffs that upon the death of the life tenant in August, 1969, they, as her surviving children, became entitled to the full fee simple title and are entitled to summary judgment.

 On the basis of what we now have before us, we have concluded that an issue of fact is presented. The covenants contained in the deed of February 18, 1922, are coupled with the statement therein that

upon failure to comply the deed may be cancelled by the grantor. This language was binding on the grantees as the deed was accepted. Greene v. White, 137 Tex. 361, 153 S.W.2d 575 (1941). Under the record, a fee simple on condition subsequent was created and the available remedy to the grantor was a forfeiture of the estate. Jeffery v. Graham, 61 Tex. 481 (1884); Houston & T. C. R. Co. v. Ennis-Calvert Compress Co., 23 Tex.Civ.App. 441, 56 S.W. 367 (1900, writ ref'd); Norris v. Coffman, 95 S.W. 1088 (Tex.Civ. App.1906); Goodman v. Bingle, 48 S.W.2d 432 (Tex.Civ.App.—Galveston 1932, no writ); Dickenson v. Board of Trustees of Chico Independent School Dist., 204 S.W. 2d 418 (Tex.Civ.App.—Fort Worth 1947, writ ref'd); Deeds: Covenants and Conditions, 16 Baylor L.Rev. 147; Restrictions on the Use of Land, 27 Texas L.Rev. 158; 15 Tex.Jur.2d 722. The words of forfeiture are that the deed may be cancelled by the grantor. Missouri-Kansas-Texas Railroad Company of Texas v. Taub, 345 S. W.2d 442 (Tex.Civ.App.—Houston 1961, no writ). A right to defeat the conveyance is expressed. See Hearne v. Bradshaw, 158 Tex. 453, 312 S.W.2d 948 (Tex. Sup.1958).

An amended affidavit of Silverio Zambrano was filed on behalf of the defendants with the permission of the trial Court. Silverio Zambrano was another son of Esteban Sambrano. It states that after the deed of 1922 trouble developed between the grantor and the grantees concerning the improper operation of and lack of repairs to the waterworks; that Mr. Olivas said that he had neither the time nor the money to supply the customers nor make the repairs; that this was due to the fact that Mr. Olivas was lazy and a heavy drinker; that Esteban Sambrano then threatened to take all of the property back but the dispute was settled by Mrs. Olivas retaining Lots 6 through 14 and by their executing the deed to Lots 15 through 18 to Esteban Sambrano "through the trustee, Victor Sambrano." Lots 15 through 18 contained the waterworks and Silverio describes in detail how the works were turned over to him by Esteban Sambrano and how he maintained and operated them for two years. While this affidavit is unsupported by the pleadings of the defendants, it does disclose facts which render the position of the moving party untenable regardless of defects in the pleadings. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233 (1957). This affidavit raises a fact issue as to a violation or breach of the condition subsequent participated in by the life tenant who had the obligation to perform the covenants for the three years expressed in the deed.

A case in point is that of Connecticut General Life Ins. Co. v. Bryson, 219 S.W. 2d 799 (Tex.Sup.1949). There the deed conveyed a life estate in the grantor's son, Bryson, Sr., with remainder to his children on certain conditions and restrictions. It provided for forfeiture and reversion of the entire fee title to the grantor should the son fail to pay taxes or default in any other condition in the deed. A judgment was entered which cancelled the deed and re-invested title in the grantor because of the son's failure to pay the taxes. The grantor then mortgaged the property to secure money to pay off the indebtedness of the son and then reconveyed the property in fee to the son, Bryson, Sr. The remainderman, Bryson, Jr., the son's child, then brought suit to declare his rights as a remainderman and it was held that the former suit by the grantor and the execution of the mortgage constituted a re-entry against both the life tenant and the remainderman even though the remainderman was not a party to the suit and terminated all rights of the remainderman in the realty so that the later deed to Bryson, Sr., conveyed to him the fee title and did not inure to the benefit of the former remainderman. The question of the good faith of the grantor in bringing the original suit was submitted to the jury and the jury determined that the original suit was not brought by the grantor for the purpose of

attempting to enlarge the life estate of Bryson, Sr., and to cut off the rights of the remaindermen. The Court held that the suit and later action of the grantor was a re-entry by that grantor as against Bryson, Sr., and Bryson, Jr., and nothing further was required to forfeit the interest of the life tenant and the remaindermen. "He alone was in possession and a re-entry against him was a re-entry against the remaindermen." While the contractual provisions in the Bryson deed were exact as to the reversion to the grantor and the termination of the rights of the life tenant and remaindermen, the same result can be read from the Sambrano deed where it provides that upon breach "this deed may be cancelled by the grantor." That deed not only created the rights of the remaindermen but it limited them as well.

■■ The fact issues urged by the defendants are those relating to the breach of the covenants as to the furnishing of water and the operation and maintenance of the waterworks and whether Esteban Sambrano took the property back because of such a breach. Here the property was deeded back originally to Victor Sambrano and this raises a question. The rule is that a re-entry or an equivalent remedy must be asserted within a reasonable time after the breach. 15 Tex.Jur.2d 727. However, our Courts have consistently held that a right of re-entry for a condition broken may be taken advantage of by one other than the original grantor, his heirs or successors. Perry v. Smith, 231 S.W. 340 (Tex.Comm'n App.1921). Without ruling on the matter until the facts are determined, it may well have been that because of a breach and the supposed settlement, the property was deeded to Victor at the direction of Esteban Sambrano. At least Es-

teban acquired the title on two occasions from Victor, once by deed and once by will. As to a legitimate and good faith settlement of the dispute after conditions had been broken, the plaintiffs can hardly complain as the settlement may have inured to their benefit. Their interests as remaindermen were kept alive in nine other lots. In suggesting this, we are not to be understood as holding that the rights of the plaintiffs have been terminated or that there was any re-entry by the original grantor or by one acting for him, nor are we determining any effect of the previous judgment. The pleadings obviously need to be amended and all questions will be determined at a trial on the merits of the case. We only hold that the plaintiffs have failed to meet their difficult burden for summary judgment.

■■ The plaintiffs assert that the affidavits produced by the defendants are conflicting in certain important areas. At most, this only presents a fact issue regarding the credibility of the witnesses. Also, it is urged that the proposed testimony of Silverio Zambrano as shown by his affidavit would be extrinsic evidence to contradict the plain legal effect of the deed of September, 1923, to Victor Sambrano. As stated in 2 McCormick and Ray, Texas Law of Evidence, 499, our rule is clear that an estate granted in a deed absolute may be proved to have been granted and taken in trust. The deed in question was executed and delivered long prior to the passage of the Texas Trust Act and is not affected thereby. Sevine v. Heissner, 148 Tex. 345, 224 S.W.2d 184 (1949).

The judgment of the trial Court is reversed and the cause is remanded for trial on the merits.