

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

**NO. 2-06-294-CV**

THE UNKNOWN STOCKHOLDERS        APPELLANTS
OF THE K.M. VAN ZANDT LAND
COMPANY AND THE UNKNOWN
HEIRS, SUCCESSORS, AND
ASSIGNS OF THE UNKNOWN
STOCKHOLDERS OF THE K.M.
VAN ZANDT LAND COMPANY
AND EDMUND P. CRANZ AND
NEIL L. VAN ZANDT

V.

WHITEHEAD EQUITIES, JV.;        APPELLEES
JAGEE REAL PROPERTIES, L.P.;
GARVIEW PARTNERS, L.P.;
SPOKANE VENTURES, LTD., INC.;
NONA, INC.; WILL ED WADLEY;
AND FPA FOUNDATION

------------

### FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

---

[1]  *See* TEX. R. APP. P. 47.4.

------------

Appellants, the unknown stockholders of the K.M. Van Zandt Land Company ("the Land Company") and the unknown heirs, successors, and assigns of the unknown stockholders ("the Unknown Heirs"), and Edmund P. Cranz and Neil L. Van Zandt ("the Cranz Appellants"), challenge the summary judgment granted for Appellees Whitehead Equities, JV.; Jagee Real Properties, L.P.; Garview Partners, L.V.; Spokane Ventures, Ltd., Inc.; Nona, Inc.; Will Ed Wadley; and FPA Foundation. In one broad issue, the Unknown Heirs contend that the trial court erred by granting summary judgment for Appellees. The Cranz Appellants bring two issues, arguing that the trial court erred by granting summary judgment and by granting Appellees' peremptory motion to strike Appellants' request for class certification. Because we hold that the trial court did not err by granting summary judgment, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

In the early part of the twentieth century, the Land Company dedicated several additions, divided into lots, around the West Seventh Street area of Fort Worth ("the subdivisions") and conveyed the real property under deeds containing restrictions against, among other things, the sale of alcohol on the conveyed property ("the Van Zandt deeds"). The restrictions state,

> This conveyance is however made upon the following condition
> and limitations: That if . . . intoxicating liquor shall ever be sold

2

upon said premises or any part thereof, then . . . the said premises hereby conveyed shall thereupon immediately revert to the grantor herein and its legal representatives, and the estate hereby granted shall thereupon terminate.

The Land Company formally dissolved in 1947.

Appellees own tracts of land in Fort Worth that were conveyed to them by deeds containing these provisions. Appellees filed suit seeking a declaratory judgment that the restrictions in the deeds are invalid and unenforceable and to have the trial court remove the encumbrance from the title to the property. Prior to the instant suit, some other property owners in the same area who held land under deeds from the Land Company with these restrictions had brought suit against the corporation, its directors, or its unknown shareholders to set aside the reversionary rights (as Appellants call them) or restrictive covenants (as characterized by Appellees) relating to their properties. In each of those cases, either the plaintiffs obtained a post-answer default judgment, or the parties settled, with the defendants agreeing to the removal of the restrictions. In at least one case, the trial court granted summary judgment for the plaintiffs, setting aside the "restrictive covenants, conditions subsequent, and reverter clauses" contained in the plaintiffs' deeds. But the summary judgment evidence here does not include the pleadings in that case, and so we cannot

3

say whether the restrictions at issue or the summary judgment grounds asserted in that case were the same as those here.

Appellees moved for summary judgment on six grounds: (1) there are no persons or entities with a right to enforce the restrictions; (2) Appellants are collaterally estopped from contesting Appellees' claims concerning the invalidity and unenforceability of the restrictions; (3) the restrictions are unenforceable due to Appellants' waiver and abandonment of the restrictions; (4) Appellants are prevented from enforcing the restrictions due to the changed conditions that make it impractical and inequitable to enforce the restrictions; (5) the restrictions in question are barred by the rule against perpetuities; and (6) the restrictions, if left in place, act as an impermissible restraint on the alienation of the real property in question. The trial court granted summary judgment without specifying the grounds.

## II. STANDARD OF REVIEW

A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim.[2] When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the

---

[2] *See* TEX. R. CIV. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

4

nonmovant's favor.[3]  The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law.[4]

### III. ANALYSIS

In the Unknown Heirs' sole issue and the Cranz Appellants' first issue, they contend that the trial court erred by finding that the deed restrictions created restrictive covenants and by granting summary judgment on the ground that there are no persons or entities with a right to enforce the restrictions.  We hold that the trial court did not err by granting summary judgment regardless of whether the restrictions are characterized as restrictive covenants or reversionary interests.

A court may refuse to enforce a restrictive covenant where the parties entitled to enforce it have acquiesced "in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it" or where "there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in

---

[3] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

[4] *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

a substantial degree the benefits sought to be realized through the covenant."[5] In this case, Appellees introduced thousands of pages of summary judgment evidence, including evidence relating to the character of the neighborhood. This evidence includes a report from the Fort Worth Planning Department that identifies West Seventh Street as a commercial corridor that the city wishes to revitalize and finds that the corridor is an area "characterized by predominantly commercial land uses," including restaurants. Appellees' evidence also includes a newspaper article, two affidavits, alcoholic beverage receipts from the Texas Comptroller of Public Accounts, and mixed beverage permits and wine and beer retailer permits, which, when taken together, indicate that there are over twenty businesses in and around the vicinity of Appellees' property that are openly selling alcoholic beverages, at least twelve of which are on property conveyed by the Land Company by deeds containing the same restrictions as those at issue here. Appellees also introduced evidence of past trial court judgments setting aside the Van Zandt restrictions on at least fifteen lots in and around the vicinity of Appellees' property. This evidence shows that Appellees' property is located in an area of predominantly commercial land use where the alcohol restrictions have been violated openly and never judicially enforced. It

---

[5] *Cowling v. Colligan*, 158 Tex. 458, 461–62, 312 S.W.2d 943, 945 (1958).

6

is no longer possible to realize whatever benefits the grantor had hoped to receive or to impart to grantees by preventing the sale of alcohol in the area because alcohol is being sold throughout the area, and due to the restrictions having been previously declared unenforceable on a number of lots throughout the Van Zandt subdivisions, it is no longer possible for the area to be one where the sale of alcohol is prohibited uniformly across the vicinity by restrictive covenants.

Appellants cite *Hemphill v. Cayce*[6] in support of their arguments that the restrictions should not be held unenforceable due to changed conditions or waiver and abandonment. We do not find that case controlling. That case addressed when a court should refuse to enforce a covenant restricting property to residential use and held that the presence of some businesses in or near the area is not enough to render the area unsuitable for residential purposes absent some radical change in the vicinity.[7] That holding does not affect our decision in this case where the restrictions at issue are against the sale of alcohol, not commercial use, and where change in the vicinity (to one where alcohol is sold)

---

[6] 197 S.W.2d 137, 141 (Tex. Civ. App.—Fort Worth 1946, no writ).

[7] *Id.* at 140–41.

7

is neither trivial nor so far removed from Appellees' property so as not to affect it.

Finally, although the Cranz Appellants state in their brief that the affidavit of Neil Van Zandt "creates a fact issue regarding the relevant conditions," they do not explain how the affidavit raises a fact issue as to the sale of alcohol in the area. Van Zandt states in his affidavit that he is familiar with the property "made the subject of" this suit and that "[t]o the best of [his] knowledge none has ever been used for the sale of alcohol." This vague statement does not address the specific, controverting summary judgment evidence of Appellees and does not mention at all the sale of alcohol in the area on other properties not owned by Appellees. We hold that the trial court did not err to the extent that it granted summary judgment on the ground that if the restrictions in the Van Zandt deeds are restrictive covenants, they are unenforceable.

To the extent that the restrictions can be construed as creating reversionary rights, the trial court also did not err by granting summary judgment for Appellees. Appellants argue that the restrictions create rights of reentry that were distributed to the Land Company's shareholders upon dissolution of the corporation, and therefore they, as former shareholders or heirs of former shareholders, may enforce those rights. The question before this court is not whether a right of reentry is a property right that would be

8

distributed to a company's shareholders upon dissolution of the company; the question is whether the grantor in this case (the Land Company) intended to create a right of reentry that would be enforceable by its shareholders after its dissolution. We hold that it did not.

We initially note that if the Land Company had intended to convey either an estate on condition subsequent or a determinable fee subject to a conditional limitation,[8] the deeds are unclear as to which was intended in that the deeds contain some language that has been held to create a condition subsequent as well as some language traditionally held to create a limitation.[9] The Texas Supreme Court has held that where a deed creates doubt as to whether the grantor intended a limitation or a condition subsequent, the deed should be construed as creating a condition subsequent,[10] and so if the deeds create

---

[8] *See Field v. Shaw*, 535 S.W.2d 3, 5 (Tex. Civ. App.—Amarillo 1976, no writ) ("A conditional limitation exists when the estate is limited by the happening of an event which, when it occurs, terminates the estate without the necessity of reentry. A condition subsequent designates an event which, when it happens, gives the grantor the right to terminate the estate by reentry."); *James v. Dalhart Consol. ISD*, 254 S.W.2d 826, 829 (Tex. Civ. App.—Amarillo 1952, writ ref'd) (defining a "determinable fee" as "an estate which could remain forever or which could terminate on the happening of the contingency limiting the estate" and noting that "[a]lthough the whole estate was in the grantee or owner, the possibility of reverter remained in the grantor").

[9] *Lawyers Trust Co. v. City of Houston*, 359 S.W.2d 887, 890 (Tex. 1962).

[10] *Id.*

9

reversionary interests, the interests are rights of reentry upon breach of condition subsequent. And we agree with Appellants that language similar to that of the Van Zandt deeds has sometimes been determined to impart a condition subsequent, although the law in this area is not clear or consistent.[11]

But the law does not favor forfeiture provisions or restrictions on the use of conveyed property.[12] We construe deeds as a whole,[13] keeping in mind that the parties to a deed "intend every clause to have some effect and in some

---

[11] *See id.* (construing as a condition subsequent a provision in a deed that if conveyed property ceased to be used for its designated purpose, title to the property would vest in the grantor); *Stevens v. Galveston, H. & S.A. Ry. Co.*, 212 S.W. 639, 644–45 (Tex. Comm'n. App. 1919, judgm't adopted). *But see, e.g., Ragland v. Overton*, 44 S.W.2d 768, 771 (Tex. Civ. App.—Amarillo 1931, no writ) (treating a restriction similar to that of the Van Zandt deeds as importing a restrictive covenant).

[12] *Wichita Falls Grain Co. v. Taylor Foundry Co.*, 649 S.W.2d 798, 800 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.) ("It is well settled that the law does not favor forfeitures, that a deed will be construed to avoid a forfeiture if possible, and that forfeiture provisions will be construed most strongly against the grantor."), *Knight v. Chicago Corp.*, 183 S.W.2d 666, 671 (Tex. Civ. App.—San Antonio 1944), *aff'd*, 144 Tex. 98, 188 S.W.2d 564 (1945); *see also Hearne v. Bradshaw,* 158 Tex. 453, 456, 312 S.W.2d 948, 951 (1958) ("Conditions subsequent are not favored by the courts.").

[13] *Bennett v. Tarrant County Water Control & Improvement Dist. No. One*, 894 S.W.2d 441, 446 (Tex. App.—Fort Worth 1995, writ denied) ("In seeking to ascertain the intention of the parties, the court must attempt to harmonize all parts of the deed.").

measure to evidence their agreement."[14]  Deed restrictions and forfeiture

clauses are strictly construed against the grantor, and any doubts as to the

intentions of the grantor will be resolved in favor of the grantee and "the free

and unrestricted use of the premises."[15]

For example, the Texas Commission of Appeals, faced with construing

language appearing to create a condition subsequent, held that the grantor

intended by the condition to increase the value of his other property in the area

and that therefore the condition only endured until the grantor's purpose had

been met; thus, when the grantor owned no more property that would benefit

from the condition, the grantor could no longer enforce the condition.[16]  One

court of appeals held that a provision similar to the one in the Van Zandt deeds

did not inure to the benefit of the grantors' heir and could not be enforced by

---

[14] *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).

[15] *Ragland*, 44 S.W.2d at 771; *see also Stevens*, 212 S.W. at 644 (noting that because forfeitures are not favored, language ordinarily used to create a condition subsequent is strictly construed against the grantor).

[16] *See Stevens*, 212 S.W. at 645 (holding that where the grantors in the deeds at issue did not appear to have had any interest in the conditions expressed in the deeds other than the enhancement in value of their other property that would result from the compliance with the conditions, and where the grantors had subsequently conveyed all their other property that was expected to benefit from the conditions, the grantors had no interest in further compliance with the conditions), *Maddox v. Adair*, 66 S.W. 811, 813–14 (Tex. Civ. App.—Dallas 1901, writ ref'd) (same).

11

the heir when the conveyance said only that upon breach of the condition, the property would revert to the grantors.[17]  It has also been held that where a restrictive clause states that the deed would become null and void if the deed's condition was breached by the "grantee, his heirs[,] or legal representatives," because the clause omitted the word "assigns," any breach by an assignee of the grantee would not cause a reversion.[18]

The deeds in this case state that upon breach of the deed restrictions, the property conveyed would revert to "the grantor herein and its legal representatives."  The term "legal representative" has no fixed meaning in the law, but Texas case law suggests that the term refers to "one who is a party substitute or one who can sue on another's behalf" or "one who succeeds to a party's legal rights, by reason of death, or the operation of law."[19]  Texas statutes in some cases define when a person may act for another as a legal representative.[20]  Under the common law, "when there is nothing in the context

---

[17] *Daggett v. City of Fort Worth*, 177 S.W. 222, 223 (Tex. Civ. App.—Amarillo 1915, no writ).

[18] *Ragland,* 44 S.W.2d at 771.

[19] *McMahan v. Greenwood*, 108 S.W.3d 467, 488–89 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

[20] *See, e.g.,* TEX. REV. CIV. STAT. ANN. art. 1302-2.06 (Vernon 2003) (stating that a domestic entity may in some cases bring suit against its

12

to control its meaning, its primary and ordinary meaning is 'executors and administrators.'"[21]

Courts generally distinguish between a person acting in his own right and one acting as the legal representative of another.[22] Although the term may be construed more broadly where it appears a broader construction was intended,[23] in this case, we must resolve any doubt about the grantor's intention against the grantor. A corporation's shareholders may, in some

managerial officials either by acting directly or through "a receiver, trustee, or *other legal representative*") (emphasis added); TEX. PROP. CODE ANN. § 54.006 (Vernon 2007) (distress warrant may be applied for by a person to whom rent is payable under a lease or by the person's "agent, attorney, assign, *or other legal representative*") (emphasis added); TEX. LAB. CODE ANN. § 503.071 (Vernon 2006) (stating that the attorney general is the legal representative of the institutions of the University of Texas System and may bring and defend all suits necessary to carry out the purposes of that chapter of the labor code); TEX. WATER CODE ANN. § 26.022(c) (Vernon 2008) (with respect to notice of hearings, "[i]f the party is not an individual, the notice may be given to any officer, agent, or legal representative of the party").

[21] *McMahan*, 108 S.W.3d at 487–88; *see also Newton v. Newton*, 77 Tex. 508, 511, 14 S.W. 157, 158 (1890) ("Executors, administrators, and, if there be neither, the heirs, are the legal representatives of a deceased person").

[22] *See, e.g., Hanover Ins. Co. v. Hoch*, 469 S.W.2d 717, 724 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.) (holding that the Dead Man's Statute did not exclude testimony as to conversations with the decedent where the third-party defendants were sued in their individual capacities and not as legal representatives of the decedent's estate).

[23] *McMahan*, 108 S.W.3d at 491 (noting that the "primary meaning of the term 'legal representatives' would, of course, yield to a context which clearly showed a different meaning was intended").

circumstances, represent the corporation, but in that case, the shareholders act for the corporation and not themselves.[24] Former shareholders of a corporation, after that corporation's dissolution and period of winding up, do not represent the corporation.[25] Thus, if the Land Company had intended the right of reentry to pass to and be enforceable by its former shareholders after dissolution, it would have made such intention clear, for example, by the use of the term "successors" or "shareholders upon dissolution."[26] We hold that the term "legal representatives," as used in the Van Zandt deeds, does not include Appellants.

Further, although the restriction in each deed states that it is binding on the grantee and any of his heirs, legal representatives, and assigns thereafter,

---

[24] *See, e.g., El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 251, 253 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (noting that if a corporation's charter has been forfeited, title to the corporations' assets is bifurcated, with beneficial title in the shareholders, and in that case, a shareholder may sue on the corporation's behalf, as the corporation's representative, but it may not sue to recover individually).

[25] *See Sugg v. Smith*, 205 S.W. 363, 370 (Tex. Civ. App.—Austin 1918, writ ref'd) ("[W]hen corporations die or cease to exist they have no heirs who inherit their property or their rights. Their assets belong to the stockholders . . .; [but] *the stockholders do not constitute the corporation or its legal representative* further than is necessary for the protection of their rights as stockholders.") (emphasis added).

[26] *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 385–86 (Tex. App.—Texarkana 2003, pet. denied) (discussing deed restrictions filed by the corporation developing a subdivision, which the corporation had provided would "inure to the benefit of the Corporation, *its successors and assigns"*) (emphasis added).

the deed does not use such terms as "successors"[27] and "assigns" in describing

to whom the estate would revert upon breach of the condition, even though

some of the deeds by which the Land Company conveyed property in the Van

Zandt subdivisions were executed after it was judicially determined that in

Texas, rights of reentry are assignable,[28] and even though a dissolved

corporation's successors can be its shareholders.[29] We think it relevant that the

list of those against whom the restriction would run included not just the

---

[27] *See El T. Mexican Rests., Inc.*, 921 S.W.2d at 253, n.10 (stating that, had the sole shareholder of a corporation dissolved the corporation, he would have "properly acquired both its assets and its liabilities" and become the corporation's successor in interest); CHRISTOPHER GUSTAVUS TIEDEMAN & EDWARD JOSEPH WHITE, THE AMERICAN LAW OF REAL PROPERTY § 30 (1906) ("And if the conveyance be to a corporation the word 'successors' takes the place of 'heirs,' since a corporation cannot have heirs.").

[28] *Perry v. Smith*, 231 S.W. 340, 344 (Tex. Comm'n App. 1921, judgm't adopted).

[29] *Compare El T. Mexican Rests., Inc*, 921 S.W.2d at 253–54 (stating that if the corporation at issue had been dissolved, its sole shareholder would have been the corporation's successor in interest, but because the shareholder had not yet dissolved the corporation, the shareholder was not a successor in interest); *and* TEX. BUS. CORP. ACT ANN. art. 5.06 (Vernon 2003) (stating that when two corporations merge, the surviving or new corporation owns the property of the merged corporations, unless the property is otherwise provided for in the plan of merger), *and Int'l Ass'n of Machinists, Lodge No. 6 v. Falstaff Brewing Corp.*, 328 S.W.2d 778, 781 (Tex. Civ. App.—Houston 1959, no writ) (holding that as applied to corporations, the term "successor" "does not ordinarily connote an assignee, but is normally used in respect to corporate entities, . . . and does not contemplate acquisition by ordinary purchase from another corporation, and, in respect to natural persons, is apt and appropriate term to designate one to whom property descends or estate of decedent").

15

grantee but all those that could take from the grantee, but the list of those to whom the property could revert was much more limited.[30] Under the language of the deeds, Appellants only hold the rights of reentry from the deeds in this case if they are "the grantor" or "its legal representatives." Appellants are clearly not the Land Company, and we have already held that they are not its "legal representatives."

Construing the deed as a whole, and resolving any doubt against the grantor and in favor of the grantee and the free and unrestricted use of the property, we hold that the restriction was intended to benefit the Land Company only while it continued in existence, engaging in the business of selling real estate, and was not intended to exist perpetually for the benefit of its former stockholders and their heirs. The Land Company has been dissolved and its affairs wound up, and Appellants are not entitled to enforce the restrictions.

Appellants argue that reversionary rights may be devised, conveyed, or assigned and that when the company dissolved, the reversionary rights in this

---

[30] *See Dilbeck v. Bill Gaynier, Inc.*, 368 S.W.2d 804, 808 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e.) (stating that the court did not believe that the appellant grantors contemplated forfeiture of the conveyed property and noting that "[i]f appellants had any such intention it could easily have been expressed in the deed" and that "[i]ts omission, while not controlling, is significant").

16

case were distributed to the shareholders as a matter of law. The fact that a right of reentry may be devised, conveyed, or assigned does not compel a holding that, in this case, the grantor intended to create a right of reentry that would be inherited, conveyed, or assigned or that Appellants now hold that right. Appellants point to summary judgment evidence of a probate court judgment stating that reversionary rights were vested as a matter of law in the shareholders of the Land Company upon the company's dissolution. That judgment does not set forth the deed language creating the reversionary rights at issue in that case, so even if the probate court was correct that a right of reentry passes to shareholders upon a company's dissolution, it is not relevant to a determination in this case of whether the grantor intended the right of reentry to be enforceable by its successors. And we note that the language of that probate judgment indicates that the condition related to whether the property at issue was used for school purposes.

Similarly, Appellants argue that the deeds did not have to state that the property would revert to the grantor or its "heirs" because corporations do not have "heirs"; but even if the word "heirs" is not required to make valid a right of reentry in a deed from a corporation, because the language of the deed

17

shows no intention to allow successors to hold or enforce that right, we will not create one.[31]

Finally, Appellants argue that Appellees have judicially admitted that Appellants are successors to the rights of reentry. They base their argument on the fact that Appellees argued that Appellants are collaterally estopped by earlier judgments "because they are successors in interest who derived their claims either through the [Land] Company . . . or earlier unknown heirs and stockholders." Again, even if Appellants are correct that Appellees judicially admitted that Appellants are the successors in interest to the Land Company, that does not require a holding that Appellants hold rights of reentry to Appellees' property that they are entitled to enforce or that the Land Company intended for its successors to hold such rights. We have held that the Land Company's deeds evidence no such intention. We therefore hold that the trial court could have properly granted summary judgment on the ground that Appellants do not have a right to enforce the restrictions. We overrule the Unknown Heirs' sole issue and the Cranz Appellants' first issue on the ground

---

[31] *See Gladewater County Line ISD v. Hughes*, 59 S.W.2d 351, 354 (Tex. Civ. App.—Texarkana 1933), *aff'd,* 124 Tex. 190, 76 S.W.2d 471 (1934) ("[A] deed will not be construed to create an estate on condition or limitation unless language is used which . . . , from their own force, imports a condition or limitation or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated.").

that Appellants are not entitled to enforce the deed restrictions, and we do not reach Appellants' other arguments with respect to the deed restrictions.[32]

In their second issue, the Cranz Appellants's assert that the trial court erred by granting Appellees's motion to strike the Cranz Appellants' request for class certification. Because we have held that the trial court did not err by granting summary judgment for Appellees, we overrule this issue as moot.[33]

## IV. Conclusion

Having overruled Appellants' issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED: June 19, 2008

---

[32] *See* TEX. R. APP. P. 47.1.

[33] *See id.*

19